**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Penny Lee Martinez,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>    Defendant. | No. CV-12-01886-PHX-NVW<br><br>**ORDER** |

  Plaintiff Penny Lee Martinez seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I. BACKGROUND**

  **A. Factual Background**

  Martinez was born in September 1958. She has a high school education, completed one year of college, and is able to communicate in English. She worked as a data conversion/data entry operator for the United States Post Office for more than twelve years. She also has worked as a loan supervisor and a Wal-Mart greeter. Martinez believes she is unable to work because of pain in her hands and wrists.

### B. Procedural History

On March 11, 2008, Martinez applied for disability insurance benefits, alleging disability since December 19, 2006. On March 19, 2010, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On July 23, 2010, the ALJ issued a decision that Martinez was not disabled within the meaning of the Social Security Act. The Appeals Council denied Martinez's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On September 7, 2012, Martinez sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

## III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears

the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Martinez meets the insured status requirements of the Social Security Act through December 31, 2011, and that she has not engaged in substantial gainful activity since December 19, 2006. At step two, the ALJ found that Martinez has the following severe impairments: carpal tunnel syndrome, hypothyroidism, diabetes, and chronic obstructive pulmonary disease. Martinez does not claim to be unable to work because of hypothyroidism, diabetes, or chronic obstructive pulmonary disease.

At step three, the ALJ determined that Martinez does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that Martinez:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant can lift and carry 10 pounds occasionally and 5 pounds frequently and can sit, stand and walk 6 hours in an 8-hour workday. The claimant can occasionally climb ramps and stairs and is unable to climb ladders, ropes and scaffolds. The claimant can frequently balance, stoop and kneel and can occasionally crawl. The claimant must avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation and hazards such as moving machinery and unprotected heights.

The ALJ further found that Martinez is unable to perform any of her past relevant work. At step five, the ALJ concluded that, considering Martinez's age, education, work experience, and residual functional capacity, she has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

## IV.   ANALYSIS

Martinez contends the ALJ erred by failing to recognize that her primary symptom pain was not "caused by carpel tunnel syndrome, but by left and right CMC joint osteoarthritis diagnosed by Dr. Burgess (TR. 189), alternatively diagnosed by Dr. Campbell as bilateral TMC synovitis or basal joint arthrosis (TR. 230)."[1] (Doc. 17 at 14.) As a result, she contends, the ALJ erred by finding her capable of occasional handling and fingering with the hands bilaterally and by finding her subjective symptom testimony not fully credible. Finally, she contends that the ALJ erred by determining that she had skills from past work she could transfer to the occupation of information clerk.

---

[1] "CMC" refers to carpometacarpal. "TMC" refers to trapeziometacarpal.

**A.  The ALJ Did Not Err in Interpreting Medical Source Evidence, and the ALJ's Determination that Martinez Is Capable of Occasional Handling and Fingering with the Hands Bilaterally Is Supported by Substantial Evidence.**

Generally, an ALJ should give more weight to the opinion of a treating physician than to the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

The record includes treatment notes from May 16, 2007, through March 5, 2008, by Kraig M. Burgess, D.O., a specialist in upper extremity and hand surgery. On May 16, 2007, Dr. Burgess noted that Martinez is right hand dominant. Based on his motor sensory examination, x-ray examination, and review of a previous EMG, Dr. Burgess summarized his impressions as left CMC joint osteoarthritis, right de Quervain's tendinitis, left mild carpal tunnel syndrome, and right bicipital tendinosis. He administered injections of Kenalog and Marcaine into the left CMC joint and right first dorsal compartment. Martinez also was fitted with a splint for her left hand to be used during the day and was instructed to continue using her nighttime splints for control of her carpal tunnel symptoms. Dr. Burgess prescribed an anti-inflammatory medication and occupational therapy.

On July 11, 2007, Dr. Burgess opined that Martinez's carpal tunnel condition was stable with the conservative treatment and splint immobilization. On August 8, 2007, Dr. Burgess recorded his impressions as right wrist de Quervain's tendinitis post cortisone

injection with improvement, left CMC joint osteoarthritis status post cortisone injection with some improvement, right CMC osteoarthritis, right bicipital tendinitis, and mild left median neuropathy by neurodiagnostic evaluation. On August 29, 2007, Dr. Burgess recorded his impressions as right wrist de Quervain's tendinitis post cortisone injection, left CMC joint osteoarthritis status post cortisone injection, right thumb CMC arthrosis, right bicipital tendinosis, and mild left median neuropathy by neurodiagnostic evaluation. He observed "some mild crepitation over the bilateral CMC joints" and "signs of weakness to grip and pinch strength."

On September 10, 2007, Jacquelynn Paul, MS, an exercise physiologist, performed a functional capacity evaluation prescribed by Dr. Burgess. Martinez's grip and pinch strengths for both upper extremities were significantly below the normal range for her age and gender. She exhibited pain behaviors during occasional keyboarding at a below competitive performance level. During the frequent keyboarding protocol, Martinez reported increased discomfort in both wrists, and her blood pressure increased to 160/70. After a ten minute rest, her blood pressure did not decrease, and she was not asked to attempt the constant keyboarding protocol.

On October 17, 2007, Dr. Burgess saw Martinez and noted that her physical examination was essentially unchanged. He had anticipated reviewing her functional capacity evaluation, but noted she was unable to complete it due to an increase in her blood pressure. Dr. Burgess explained to Martinez that he did not have any further treatment to offer and did not feel that a carpal tunnel release would provide her with any significant or lasting pain resolution.

On November 9, 2007, Dr. Burgess recorded his impressions as mild left median and sensory entrapment neuropathy, negative right neurodiagnostic evidence of carpal tunnel syndrome, left CMC joint osteoarthritis, right thumb CMC arthrosis, and mild diffuse upper extremity tendinopathy. He noted that "[s]he has weakness bilaterally to

the thenar musculature, though this could be effort related." Dr. Burgess also noted that he had explained to Martinez that he "will not be the physician to grant her permanent disability."

On November 30, 2007, Dr. Peter Campbell, M.D., a hand surgery consultant, performed an independent medical examination of Martinez. He reported:

> Currently she does not have clinical signs or symptoms of carpal tunnel syndrome, but does show clinical evidence of basal joint pain. This pain has increased during the past year while she has not been working and this most likely represents basal joint synovitis, but would be unrelated to any work activity and is more likely attributable to the natural aging process. Basal joint synovitis/arthrosis is the most common arthritide affecting the female hand.

(Doc. 10-8 at 47, TR. 230.)

On March 5, 2008, Dr. Burgess diagnosed Martinez as having left and right CMC joint osteoarthritis Stage 1. He explained: "Carpometacarpal joint osteoarthritis is a progressive and degenerative condition." Dr. Burgess opined:

> I do feel that vocational rehabilitation is realistic and that she may be able to obtain some form of gainful employment in the future, should it not include some of the repetitive overuse, which she has performed for so many years. . . . Her permanent restrictions should include no repetitive overuse of the bilateral upper extremities.

(Doc. 10-8 at 6, TR. 189.)

Martinez contends: "The ALJ did not have to do anything but read Ms. Paul's report carefully, read the records from Dr. Burgess and Dr. Campbell, and correlate diagnoses reflecting anatomical abnormalities of both thumbs, corroboration of attendant pain symptoms by multiple physicians, and the [functional capacity evaluation] results." (Doc. 17 at 15.) But none of those sources indicated that Martinez was incapable of doing *any* work. The ALJ expressly gave the opinions of her treating physicians

- 7 -

"substantial weight as they are consistent with the evidence that the claimant is limited in her ability to engage in frequent handling and fingering and is unable to return to her past work." The ALJ noted that Dr. Campbell had observed in November 2007 that Martinez had a full range of motion in her elbow, wrists, and fingers, and there was clinical evidence of basal joint pain, but not carpal tunnel syndrome. The ALJ also stated that Dr. Campbell opined that the pain may "be unrelated to any work activity and is more likely attributable to the natural aging process." Further, the ALJ stated that Dr. Campbell reported that no permanent work restrictions were required.

Regardless of whether Martinez has carpal tunnel syndrome, left and right CMC joint osteoarthritis, bilateral TMC synovitis, and/or basal joint arthrosis, none of her treating physicians opined that she is incapable of occasional handling and fingering with the hands bilaterally, only that overuse should be avoided. Thus, the ALJ did not err in finding Martinez capable of occasional handling and fingering with the hands bilaterally.

**B.     The ALJ Did Not Err in Evaluating Martinez's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis:  (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Martinez's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Martinez's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

At the administrative hearing, the ALJ asked Martinez why she believed she was unable to work. She responded: "Due to the overwhelming pain that I get in my hands that I cannot seem to control. I think it is more arthritis than it is carpal tunnel, but it does cause me to have to take considerable amount of medicine to control the pain." (Doc. 10-3 at 44.)

The ALJ gave the following specific, clear, and convincing reasons for finding Martinez's symptom testimony only partially credible: (1) the medical evidence indicates Martinez's carpal tunnel syndrome restricts her to occasional handling and fingering, but does not prevent all work; (2) the treatment Martinez has received has been routine and/or conservative; and (3) Martinez reported that hydrocodone and ibuprofen partially alleviated her symptoms. Therefore, the ALJ did not err in finding Martinez's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

### C. Substantial Evidence Supports Finding that Martinez's Skills Acquired from Past Relevant Work Are Transferable to Other Occupations with Jobs Existing in Significant Numbers in the National Economy.

#### 1. Legal Standard

At step five, after having determined that Martinez's disabilities prevent her from doing her past relevant work, the ALJ was required to decide whether Martinez's impairments prevent her from performing other work that exists in the national economy, considering his residual functional capacity together with the "vocational factors" of age, education, and work experience. Social Security Policy Ruling ("SSR") 00-4p (12/4/00). Work is considered as existing in the national economy when both (1) its requirements can be met by the claimant with his or her physical or mental abilities and vocational qualifications, and (2) it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a), (b).

The Commissioner will take administrative notice of reliable job information from various governmental and other publications, but relies primarily on the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor and its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles. 20 C.F.R. § 404.1566(d); SSR 00-4p. The Commissioner also may, but is not required to, use the services of a vocational expert or other specialist to determine whether a claimant's work skills can be used in other work and the specific occupations in which they can be used. 20 C.F.R. § 404.1566(e). "An ALJ may take administrative notice of any reliable job information, including information provided by a [vocational expert]." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Whether skills acquired from past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work depends on the similarity of occupationally significant work activities among different jobs. 20 C.F.R. § 404.1568(d)(1). Transferability is most probable and meaningful among jobs in which (1) the same or lesser degree of skill is required, (2) the same or similar tools and machines are used, and (3) the same or similar raw materials, products, processes, or services are involved. 20 C.F.R. § 404.1568(d)(2). But a complete similarity of all three factors is not necessary for transferability. 20 C.F.R. § 404.1568(d)(3).

Martinez contends that the ALJ's conclusion that Martinez is not disabled because she has acquired work skills from past relevant work that are transferable to another occupation, such as information clerk, is not supported by substantial evidence. Marilyn Kinnier, a vocational expert for the Social Security Administration, identified Martinez's previous jobs as data conversion/data entry operator for the Post Office, information clerk (Wal-Mart greeter), and loan department supervisor. After determining that Martinez could not perform her past relevant work, the ALJ asked Kinnier whether a hypothetical

person of Martinez's age, education, work experience, and residual functional capacity for a reduced range of sedentary work with only occasional fingering and handling, could perform other work that exists in significant numbers. Kinnier testified that such a person could work as an information clerk, using verbal and keyboarding skills she had learned in past relevant work as a data entry operator. An information clerk, DOT 237.367-022, answers inquiries from persons entering an establishment, such as a shopping mall, library, or office. Martinez contends that she does not have skills transferable to an information clerk job because Kinnier identified only keyboarding and computer skills as transferable from past relevant work, Martinez's functional capacity evaluation showed her keyboarding skills below a competitive level, and the DOT description of information clerk does not include keyboarding or computer skills. But Kinnier was not limited to information included in the DOT. From her field experience—and common experience—she reasonably could have observed that answering inquiries from the public in a shopping mall, library, or office often involves using a computer to obtain phone numbers, directories, and maps/diagrams and would not require repetitive keyboarding at a competitive level. Therefore, the ALJ did not err in finding Martinez had acquired work skills from past relevant work that are transferable to other occupations, such as information clerk.

Moreover, on the alleged disability onset date, Martinez was 48 years old, which is defined as a younger person (age 45-49). *See* 20 C.F.R. § 404.1563(c). If a claimant is under age 50, age is generally considered to not affect the claimant's ability to adjust to other work, but in some circumstances, persons age 45-49 are considered more limited in their ability to adjust to other work than persons who have not attained age 45. *Id.* Those circumstances are when the claimant (1) is limited to sedentary work, (2) is unskilled or has no transferable skills, (3) has no past relevant work or is unable to perform past relevant work, and (4) is either illiterate or unable to communicate in English. 20 C.F.R.

Part 404, Subpart P, Appendix 2, Rule 201.17. Because Martinez is able to communicate in English, is not illiterate, and was 48 years old on the alleged disability onset date, she is not considered limited in her ability to adjust to other work. Thus, even if substantial evidence did not support the ALJ's finding that Martinez has acquired work skills from past relevant work that are transferable to other occupations, such as information clerk, any such error would be harmless. Because of her younger age and ability to communicate in English, the ALJ could have found Martinez capable of performing unskilled sedentary work without finding she had any transferable work skills. *See* Social Security Ruling 82-41, 1982 WL 31389 at *848 ("When the table rules in Appendix 2 are applicable to a case, transferability will be decisive in the conclusion of 'disabled' or 'not disabled' in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of 'not disabled' may be based on the ability to do unskilled work.").

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 21st day of October, 2013.

_____
Neil V. Wake
United States District Judge

- 12 -